Kristen CANTY, Plaintiff,

v.

OLD ROCHESTER REGIONAL SCHOOL DISTRICT, and John Shockro, Defendants.

No. Civ.A. 98–11531–WGY.

United States District Court, D. Massachusetts.

Sept. 1, 1999.

See also, 54 F.Supp.2d 66.

Craig A. MacDonnell, Keegan, Werlin & Pabian, LLP, Boston, MA, Denis R. Hurley, Thomas A. Conway, Featherstonhaugh, Conway, Wiley & Clyne, Albany, NY, for plaintiffs.

Richard W. Renehan, Daniel C. Winston, Hill & Barlow, Boston, MA, for defendants.

Gregory I. Massing, Attorney General's Office, Boston, MA, Catherine E. Sullivan, Assistant Attorney General, Criminal Bureau, Boston, MA, for Michael Sullivan, Michael Sullivan, District Attorney for Plymouth County, interested party.

### MEMORANDUM AND ORDER

YOUNG, Chief Judge.

### I. *Introduction*

This action arises out of the sexual abuse of the plaintiff, Kristen Canty ("Canty"), when she was a student at Old Rochester Regional High School, by a coach named John Shockro ("Shockro"). Old Rochester Regional School District (the "School District") seeks summary judgment on Canty's only remaining claim—a claim for compensatory and punitive damages under 20 U.S.C. § 1681 ("Title IX").[1]

### II. *UNDISPUTED FACTS*

For the purpose of summary judgment, it is undisputed that, in the mid–1990's,

Canty was a student at Old Rochester Regional Junior High School and Old Rochester Regional High School, both of which are owned, operated, managed, and controlled by the School District (an educational institution receiving Federal funding). *See* Am.Compl. ¶¶ 5, 17; Gardner Aff. ¶ 2. On September 19, 1995, a coach in the School District, Shockro, raped Canty on school property. *See* Cheng Aff., Ex. 3 at 21. In 1997, Shockro pled guilty to charges of rape and sexual assault of Canty and another student. *See* Am.Compl. ¶ 22.

Although the School District contends that its officials did not initially believe Canty's allegations of rape and Shockro's sexual misconduct, *see* Gardner Aff. ¶ 11, the School District reprimanded Shockro in writing three times, *see id.* at ¶¶ 12, 15, 19, forbade him from being in the same building with Canty with a limited exception, *see id.*, Ex. H, and prohibited him from contacting or speaking with Canty, *see id.*, Ex. J. Subsequently, Shockro continued to have inappropriate sexual contact with Canty both on and off school property. Approximately two years after Shockro raped Canty, upon receiving a purportedly more credible accusation of Shockro's sexual abuse of another student, the School District placed Shockro on administrative leave and subsequently dismissed him. *See id.* at ¶¶ 20–22.

Without delving into the remaining undisputed facts of the case, the Court emphasizes the following circumstances because, as shown below, they are dispositive of the instant motion. Both of Canty's parents have testified by deposition that in "early September 1996" the former principal of Old Rochester Junior High School,

---

1. The School District correctly points out that Canty did not submit any opposition to its motion for summary judgment on her counts for discriminatory custom, policy, or failure to train under Title IX, and thus the School District is entitled to summery judgment on those counts.

The School District also seeks summary judgment on Canty's section 1983 claims in the event that the First Circuit reverses this Court's earlier dismissal of such claims on interlocutory appeal. In essence, such a ruling would be an advisory opinion and the Court will not consider that aspect of the motion.

Robert Gardner ("Gardner"), told Canty's parents that he believed Canty's allegations of the 1995 rape and that Shockro was "a sick man and he needs help," (the "September Admission"). *See* Cheng Aff., Ex. 2 at 106, 11. 15–17; *id.*, Ex. 4 at 49, 11. 2–5. Nevertheless, the School District only issued Shockro a letter of reprimand (his second of three), *see* Gardner Aff. ¶ 15, and did not dismiss him until five months later, *see id.* at ¶ 22. The timing of Gardner's September Admission is critical because Canty allegedly had intercourse with Shockro three times that month. *See* Cheng Aff., Ex. 3 at 95, 11. 2–3. Moreover, even after the September Admission, when Gardner learned that Canty had reported continued inappropriate meetings with Shockro,[2] he merely issued another reprimand letter to Shockro at that time. *See* Gardner Aff. ¶¶ 17–19.

### III. *Claim for Compensatory Damages Under Title IX*

■ In *Gebser v. Lago Vista Ind. Sch. Dist.*, 524 U.S. 274, 118 S.Ct. 1989, 1999, 141 L.Ed.2d 277 (1998), the Supreme Court announced for the first time that in order to recover compensatory damages under Title IX for sexual harassment, a plaintiff must show that (i) an official who at a minimum has "authority to address the alleged discrimination" and to institute corrective measures on the recipient's behalf had "actual knowledge" of discrimination and (ii) that official's failure to respond amounts to "deliberate indifference." As the School District admits that Gardner had authority to address the alleged discrimination and institute correc-

tive measures, *see* Def.Mem. at 11, and the September Admission plainly demonstrates that he had actual knowledge of Shockro's sexual misconduct, the only remaining question under *Gebser* is whether the School District's actions after the September Admission constitute deliberate indifference.

In *Gebser*, the Supreme Court defined deliberate indifference as "an official decision by the recipient [of knowledge] not to remedy the violation." *Id.* at 1999. In the recently decided case of *Wills v. Brown University*, however, the First Circuit elaborated upon *Gebser*'s definition of deliberate indifference:

> [I]n the case of a Title IX claim . . ., the institution must have had actual knowledge of the harassment and have exhibited deliberate indifference to it. *Gebser*, 118 S.Ct. at 1997–99. If the institution takes *timely and reasonable* measures to end the harassment, it is not liable under Title IX for prior harassment. *Id.* Of course, if it learns that its measures have proved inadequate, it may be required to take *further steps* to avoid new liability.

*Wills v. Brown Univ.*, 184 F.3d 20, 25 (1st Cir.1999) (emphasis added).[3]

■ In light of the September Admission, which must be accepted for present purposes, it is disingenuous for the School District to conclude that written reprimands and restricting Shockro from contacting Canty were "timely and reasonable measures to end the harassment." *Id.* Even if such measures were timely and reasonable, the School District subse-

---

2. In her deposition, Canty states that in October or November of 1996, she told Assistant High School Principal Carol Stigh that "sexually inappropriate things were still going on" between her and Shockro. Cheng Aff., Ex. 3 at 96, 11.10–21. Gardner admits that he "learned from Ms. Stigh about Ms. Canty's allegations of meetings with Mr. Shockro in 1996," Gardner Aff. ¶ 17, including an allegation that Shockro stated to Canty, "I want to lay you down," *id.*, Ex. I.

3. The First Circuit's definition of deliberate indifference announced in *Wills* is in tension with the decisions of both the Fifth and Eighth Circuits. *See Kinman v. Omaha Pub. Sch. Dist.*, 171 F.3d 607, 610 (8th Cir.1999) (no deliberate indifference where school district "did not turn a blind eye and do nothing."); *Doe v. Dallas Ind. Sch. Dist.*, 153 F.3d 211, 219 (5th Cir.1998) ("Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference. . . .").

quently learned that such measures were "inadequate" after later discovering that Shockro continued to contact Canty and such contact had, at the very least, sexual undertones. At that point, certainly, the School District was required to "take further steps to avoid new liability." *Id.* Sending a third reprimand letter was plainly inadequate and, under the First Circuit's recent interpretation of *Gebser,* may amount to deliberate indifference. Thus, while Canty need not base liability at trial solely on the purported September Admission and the School District's subsequent missteps, such circumstances alone require this Court to DENY the motion for summary judgment with respect to Canty's claims for compensatory damages under Title IX.

### IV. *Claim for Punitive Damages Under Title IX*

 As a final matter, the School District argues that, at minimum, the Court should dismiss Canty's claim for punitive damages under Title IX. In ruling on the School District's earlier motion to dismiss, this Court held that punitive damages may be appropriate if Canty can show that the School District has "demonstrated complete indifference to the requirements of Title IX and has committed ongoing egregious violations with no sign of relenting." *Canty v. Old Rochester Regional Sch. District,* 54 F.Supp.2d 66, 69–70 (D.Mass. 1999). Apparently, Canty mistakenly understood this language to require proof of ongoing violations at the time of Canty's injury. This Court, however, will only permit the recovery of punitive damages if Canty can show that the School District continues to commit egregious violations of Title IX *to this day* with no sign of relenting. *See Doe v. Oyster River Co-op. School Dist.,* 992 F.Supp. 467, 483 n. 17 (D.N.H.1997) (holding that "punitive damages remedy for a private party is the best, or only, means of forcing the school district into compliance.") In light of the School District's eventual termination of Shockro, Canty must present other evidence of continuing violations. When pressed at oral argument to produce such evidence, counsel for Canty stated that (i) current officials at the School District still exhibit condescending attitudes towards allegations of sexual misconduct made by female students and, (ii) another teacher in the school district has been accused repeatedly of sexually harassing junior high school students. Even if proven, the Court expresses doubt whether such allegations amount to ongoing egregious violations. In the interest of justice, however, the Court DENIES the motion for summary judgment with respect to Canty's claims for punitive damages at this time in order to allow Canty the opportunity to submit affidavits addressing the proper elements of a claim for punitive damages. If Canty does not produce sufficient evidence of continuing violations by the School District, on or before Tuesday, September 7, 1999, the Court will revisit the ruling.

### V. *Conclusion*

For the aforementioned reasons, the School District's motion for summary judgment for compensatory and punitive damages under Title IX is DENIED. [Docket No. 48]

SO ORDERED.